Filed 4/9/13  In re Angel R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ANGEL R., a Person Coming Under the Juvenile Court Law. | B243544<br>(Los Angeles County<br>Super. Ct. No. CK81666) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARGARITA R.,<br><br>Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Philip L. Soto, Judge.  Affirmed.

Mary Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Margarita R. (mother) challenges the juvenile court's orders denying her petition for modification (Welf. & Inst. Code, section 388)[1] and terminating her parental rights (§ 366.26) to one-year-old Angel R. (Angel). The section 388 petition sought to have Angel returned to mother's custody or six months of reunification services. However, Angel was removed from mother's custody at birth because he was born exposed to methamphetamine, mother had a 15-year history of methamphetamine abuse, she had lost custody of five older children, and mother's parental rights to two of her older children had been terminated. Thus, the juvenile court denied mother reunification services and put Angel on a fast-track to adoption by his foster parents. The hearing on mother's section 388 petition coincided with the hearing set for the termination of her parental rights. Although at the time of the hearing mother had completed a drug treatment program, she had only just begun her aftercare outpatient program, was unemployed, did not have stable housing, and admittedly needed more time to become stable. Furthermore, while mother was focusing on her treatment, Angel became bonded to his caretaker, whom he saw as his mother and he had little, if any, attachment to mother. Based upon these facts, the trial court did not err in denying mother's section 388 petition and terminating her parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

*Section 300 Petition*

When Angel was born in June 2011, he and mother tested positive for methamphetamine. Mother admitted to having a 15-year history of illegal drug use and to using methamphetamine once a week while pregnant and that her last drug use was the day before Angel was born. Mother acknowledged that she had five older biological children who were not in her care. In 2000, mother had given birth to a daughter, who tested positive for methamphetamine. She failed to reunify with that child and her sibling, parental rights were terminated, and both children were adopted. In 2010, a

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

dependency action was initiated on behalf of three additional children because mother continued to use methamphetamine and allowed known gang members to reside in her home and possess and use illicit drugs in the home. Those children resided with their father. Mother did not have contact with any of her other children.

The Los Angeles Department of Children and Family Services (DCFS) placed a hospital hold on Angel and filed a section 300 petition on his behalf. The petition alleged that Angel had been born with methamphetamine in his system, that mother had a 15-year history of drug abuse, and that mother was a current abuser of methamphetamine and amphetamine. The juvenile court sustained the dependency petition on July 26, 2011.

*Jurisdiction/Disposition Report and Information for Court Officer*

DCFS placed Angel in a foster home after he was released from the hospital. From June 11, 2011, to July 11, 2011, mother visited Angel only twice. Mother reported that she used methamphetamine on July 6, 2011, just two days before she enrolled in a drug treatment program at Tarzana Treatment Center (TTC). She further stated that she remained clean until August 26, 2011, when she relapsed, drinking alcohol and using methamphetamine. However, TTC allowed her to continue in the program.

*September 9, 2011, Hearing*

The juvenile court denied mother reunification services under section 361.5, subdivisions (b)(10), (11), and (13), and found that offering mother such services would not be in Angel's best interest. A section 366.26 hearing was set for January 6, 2012, with a review hearing on March 9, 2012.

*Mother's First Section 388 Petition*

On December 23, 2011, mother filed a section 388 petition, asking the juvenile court to order reunification services. The petition alleged that mother had made exemplary progress in her drug treatment program and that reunification services would be in Angel's best interest because if she failed to reunify, he would still be young enough to be adopted. The juvenile court set the petition for hearing on February 15, 2012.

3

*Section 366.26 Report*

DCFS reported that mother had been having three-hour weekly monitored visits with Angel at TTC. During the visits, mother would feed and play with Angel and change his diaper. The foster mother reported that although Angel responded well to mother, he looked frequently to the foster mother for comfort, he liked to be held in a way that he could see the foster mother, and he tended to cry when she left the room. Angel and his foster family had developed a very strong bond and he regarded his foster parents as his parents. DCFS recommended termination of parental rights.

The juvenile court continued the section 366.26 hearing to April 6, 2012.

*Ex-Parte Report Response to Section 388/Jurisdiction Report and Hearing on Mother's Section 388 Petition*

On February 15, 2012, DCFS reported that mother was successfully working on her drug treatment program and had maintained her sobriety for about five months. Her discharge date was open and she still needed to obtain employment, establish additional recovery support in the community, and transition to a lower level of care. She was continuing her weekly monitored visits with Angel. But, it did not appear that Angel was bonding with mother.

At the hearing, the juvenile court denied mother's section 388 petition.

*Further Section 366.26 Report*

On March 9, 2012, DCFS reported that the foster parents' adoption home study had been approved. Mother continued to reside at TTC. Her drug tests remained negative, but she had an unexcused missed test on November 18, 2011. Mother also continued her weekly visits with Angel, monitored by the foster mother. The visits lasted one to two hours. Angel did not seem very bonded with mother and would repeatedly look around for the foster mother; he only seemed comfortable when the foster mother was within eyesight.

*Mother's Second Section 388 Petition*

On July 2, 2012, mother filed another section 388 petition, asking that the juvenile court either place Angel with her or order reunification services and unmonitored visits. The petition alleged that mother still was making progress in her drug treatment and that the requested relief would be in Angel's best interest because he was still young enough to be adopted if reunification failed. Attached to the petition was a letter from mother's case manager dated June 25, 2012, that indicated that mother had completed her drug treatment program on June 19, 2012, had begun an aftercare outpatient program that provided her housing, and that she would remain a patient for the next two years.

The juvenile court set the section 388 petition for a hearing on August 20, 2012, and continued the section 366.26 hearing to that date as well.

*Report in Response to Mother's Second Section 388 Petition*

On August 16, 2012, DCFS reported that mother had made much progress at TTC. In addition to the drug treatment program, mother had completed a parenting program on February 7, 2012. Upon completion of the drug program, mother had enrolled in an outpatient program with the San Fernando Valley Community Health Center, Inc. That program was designed to help the mentally ill and homeless and would provide transitional housing for mother for 18 months or longer, depending upon her stabilization and goals. The program's goal was to help mother gradually reintegrate into society by teaching her how to live without the use of drugs and alcohol and become stabilized on medications prescribed by the program's psychiatrist. As of July 3, 2012, mother was in full compliance with the program.

Attached to the DCFS report was a March 6, 2012, letter from one of mother's counselors at TTC. The letter indicated that mother was looking for employment and housing.

The social worker spoke with mother. She stated that she began visiting her three children that had not been adopted. A year earlier, mother had been diagnosed with bipolar disorder and posttraumatic stress syndrome and had been prescribed three psychotropic medications. The social worker tried to contact mother's psychiatrist, but

5

he was unavailable. Mother said that she was not allowed to have Angel with her at the transitional housing, but after she gained custody of him, her sponsor and other "sobriety sisters" would help her get appropriate housing.

The foster mother reported that when mother was at TTC, her visits with Angel had been consistent because there was structure and the foster mother would bring Angel there for the visits. However, after mother moved into the transitional housing, her visits with Angel became inconsistent. The foster mother had not heard from mother for one and a half to two weeks. During the visits, Angel appeared to respond to mother as just a friend, not as a mother figure. Also, mother never brought any food or toys to the visits. The foster mother further reported that two weeks prior, mother attended a session between Angel and his Regional Center therapist Michelle. Michelle stated that mother did not get involved or become an active participant in the session and that the quality of mother's relationship with Angel appeared to be poor.

DCFS recommended that mother's section 388 petition be denied.

*Combined Sections 388 and 366.26 Hearing*

At the August 20, 2012, hearing, the juvenile court accepted various reports into evidence. It then heard witness testimony.

Mother testified first. She stated that she had "remediated" the issues that resulted in Angel being removed from her custody by attending TTC for 11 months and two weeks, and attending parenting classes, relapse prevention classes, anger management, and meetings. She currently was in an outpatient substance abuse program where every day, from 9:30 a.m. to 3:30 p.m., she attended relapse prevention classes, anger management, community integration, and parenting. She also went to Alcoholic Anonymous (AA) 12-step meetings two hours a day, Monday through Friday, and she had a sponsor whom she spoke with every day.

Regarding her visitation with Angel, she said that she visited him once or twice a week—either mother would go to the foster mother's home or the foster mother would take Angel to mother and they would visit at a McDonald's restaurant. The visits would last one to two hours. Mother said that the visits were going great. She would play with

6

Angel, talk to him, carry him, hold him, feed him, and change him. Although he did not call her "mom," he was bonded with her and happy when he was with her.

Mother said that she would not be able to have Angel live with her at the transition housing, but if he were returned to her, she planned to live with her AA sponsor until she could "get stable [and] on [her] feet." Also, her outpatient program provided housing assistance.

Angel's foster mother testified next. She said that mother's visits with Angel occurred once a week and lasted approximately one hour. During the visits, mother played with Angel and interacted with him. She fed him and changed his diaper. When asked if Angel was bonded to mother, the foster mother stated that it depended upon his mood at the time, but he would go to her and interact and play with her. The foster mother had known mother since mother was 12 or 13 years old. She was friends with Angel's maternal grandmother before the maternal grandmother passed away, and mother had been a part of her life one way or another since then. She knew mother's entire family. Mother had even lived with her for a short period between the ages of 16 and 18. The foster mother said that mother was like family to her and she wanted mother to do what was best for mother.

The foster mother said that she had seen a genuine change in mother; she believed that mother was committed to her sobriety. The foster mother wanted what was best for Angel and if that meant being returned to mother, then that was what she wanted for him. On cross-examination, county counsel noted that before the foster mother took the stand, she handed Angel to mother and Angel immediately began crying loudly. County counsel asked the foster mother whether that was a typical reaction to him being handed to mother. The foster mother responded that Angel would go to mother nine out of 10 times, and on the tenth time he would cry. The foster mother explained: "I think he is a little freaked out by his surroundings right now. I don't think he knows where he is at. So he tends to be—he is very attached to me. There is no doubt about that. I have had him since he was born. So, I mean, it just—I just think it has to do with his surroundings because he was [crying outside] quite a bit when [mother's] sobriety sister took him out."

7

Finally, the foster mother stated that Angel calls her "mom." He was very attached to her because she spent 99.9 percent of everyday with him. The foster mother wanted to adopt him.

The juvenile court then entertained argument. Mother's attorney acknowledged that the evidence was insufficient to grant her return of her son. Angel's attorney believed that mother had shown changed circumstances and, although Angel's bond was with his foster mother, he believed that it was always in a child's best interest to be with a biological parent.

The juvenile court denied mother's section 388 petition, reasoning:

"Well, let me tell you, I've been doing this for a while. And also I did drug court for a long time. And that is a different forum because they are trying to turn their lives around in order not to go to prison. Much different motivation. But I would say if you were in that court you would probably have been one of the absolute stars of that court. I've seen people wash out of drug court and wind up going to prison still on drugs. And what you have done in a year has been amazing.

"But this is the invidious, destructive force of drugs in our society. And this is why I am so down on drugs and I am so against people that say, well let's just legalize it and everything will be okay. Everything will not be okay, and this is the reason why.

"You know, if this had been a different kind of a situation where you could have easily adapted your conduct to conform to what we wanted in the way of good parenting within six months, you probably would have been able to get this child back and move forward as a mother. But you didn't and you couldn't. And you didn't with the other children either because of this drug problem that you have had for years and years since [you were] in your teens. And that's when they get you hooked and that's when they destroy your life and then you don't even know it. And that's what is going on with every other teen in America today that is getting hooked on drugs. They are destroying their future and they don't even know it. Because you can't turn around and just drop this drug habit in six months. It's almost impossible. But that's what we need to have

8

done because these children are too young and they need to have permanency and they need to have their mother, whoever that might be."

The juvenile court continued: "This is about what is in the best interest of this child. And right now the best interest of this child is to maintain a relationship with the person that he knows as his mother. That is the foster mother.

"So the best interest of the child is not in granting more reunification services or greater visits or things of that nature. That time has come and gone. It has run. That one-year period when you needed to be there in the middle of night changing diapers, or putting something on the gums that are teething, or things of that nature, that time is lost and it cannot be returned to you because of this drug problem.

"And again, I appreciate and I commend you for doing such a great job in turning your life around. You really have. And I will, you know, maintain that to my dying day, that you of all the people of all these motions that I've seen, you have done the most to try and get yourself clean and sober. But the problem is the timing. This child has already moved on to appreciate the foster mother as his family and not recognize you as his mother. And in the best interest of the child I have to say it is best for him to remain with the foster family and be adopted. And for those reasons, I am going to find it is not in the best interest of the child to grant the motion on 388.

"I am not going to curtail the visits. The hours that you spend in monitored visits with the child I'm sure are going to be supportive to him in the future. But at this time I am not going to grant any further reunification services or return the child to you. As hard as that is to accept, I hope you will understand where I am coming from on this. Because I have to do what is best for the child."

After denying mother's section 388 petition, the juvenile court terminated mother's parental rights and identified the foster mother as Angel's prospective adoptive parent.

Mother's timely appeal ensued.

9

## DISCUSSION

I. *Section 388 Petition*

Section 388 provides, in relevant part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstances or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made." (See also *In re Brandon C.* (1993) 19 Cal.App.4th 1168, 1172; Cal. Rules of Court, rule 5.570(f).) "Section 388 provides the 'escape mechanism' . . . built into the process to allow the court to consider new information. [¶] . . . Even after the focus has shifted from reunification, the scheme provides a means for the court to address a legitimate change of circumstances . . . . [¶] . . . [T]he Legislature has provided the procedure pursuant to section 388 to accommodate the possibility that circumstances may change after the reunification period that may justify a change in a prior reunification order." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

That being said, "[i]t is not enough for a parent to show *just* a genuine change of circumstances under the statute. The parent must show that the undoing of the prior order would be in the best interests of the child." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529; § 388, subd. (b).) Some factors which "provide a reasoned and principled basis on which to evaluate a section 388 motion" include "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F., supra,* at p. 532.)

"[T]he burden of proof is on the moving party to show by a preponderance of the evidence that there is new evidence or that there are changed circumstances that make a change of placement in the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

10

"'Whether a previously made order should be modified rests within the dependency court's discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established.'" (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685; see also *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*In re Stephanie M., supra,* 7 Cal.4th at pp. 318–319.) Thus, we will not reverse a juvenile court's denial of a section 388 petition "'""unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].""'" (*In re Stephanie M., supra,* at p. 318.) "It is rare that the denial of a section 388 motion merits reversal as an abuse of discretion." (*In re Kimberly F.*, *supra*, 56 Cal.App.4th at p. 522.)

The juvenile court did not abuse its discretion when it denied mother's section 388 petition. While mother's circumstances may have been changing, they had not yet changed. As the appellate record indicates, mother had a 15-year history of methamphetamine abuse. She used weekly while pregnant with Angel, she used the day before Angel was born, and she continued to use until two days before she enrolled at the TTC. While mother's efforts in addressing her drug abuse problem are laudable, her one year of sobriety cannot be viewed in a vacuum. (See, e.g., *In re Amber M., supra,* 103 Cal.App.4th at pp. 686–687; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1082; *In re Kimberly F.*, *supra*, 56 Cal.App.4th at p. 531, fn. 9.)

Regarding the relative bond Angel has with mother and his foster mother, it is undisputed that Angel's attachment was with his foster mother; there was little if any attachment to mother. Mother correctly attributes this to her need to focus primarily on her personal recovery rather than on her relationship with Angel, and she acknowledges that developing a stronger relationship with him would require more contact over time. But that is the point—mother began her recovery process too late. The focus must be on Angel's need for permanence, which mother could not provide.

11

Mother was still in the process of her treatment. She had only recently begun her aftercare treatment program that was designed to gradually reintegrate her into society. Her TTC counselor said that she would be a patient for the next two years. And, mother was not able to have Angel live with her in her transitional housing. She even admitted that she was not yet stable and needed time to get "on [her] feet." Under these circumstances, in the interest of Angel's stability, the juvenile court rightly denied mother's section 388 petition. (See, e.g., *In re Edward H.* (1996) 43 Cal.App.4th 584, 594.)

II. *Section 366.26 Order*

On appeal, mother argues that the juvenile court's order terminating mother's parental rights must be reversed because the juvenile court erred in denying her section 388 petition. As set forth above, we conclude that the juvenile court rightly denied mother's section 388 petition. It follows that the juvenile court rightly terminated mother's parental rights.

**DISPOSITION**

The juvenile court's orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
BOREN


_____, J.
CHAVEZ

12